Jose Everardo Chapa, Jr., Yzaguirre & Chapa, McAllen, TX, for Defendant–Appellant.

Before KING, DAVIS, and ELROD, Circuit Judges.

*ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES*

PER CURIAM: *

Defendant–Appellant Reynaldo Vega was convicted of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). The trial court sentenced Vega to 210 months' imprisonment and ordered that Vega was jointly and severally liable for the remainder of a restitution award to one of his victims. On appeal, Vega challenged the sentence of imprisonment but not the order of restitution. We affirmed Vega's sentence.

The Supreme Court vacated our judgment and remanded for further consideration in light of *Paroline v. United States,* —— U.S. ——, 134 S.Ct. 1710, 188 L.Ed.2d 714 (2014). In *Paroline,* the Court held that 18 U.S.C. § 2259 requires "restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." 134 S.Ct. at 1727. Although Vega did not challenge the order of restitution in his initial appeal, the Government has waived any claim of appellate procedural default and requested that this case be remanded

to the district court for proceedings consistent with *Paroline.* The parties do not argue that *Paroline* affected Vega's sentence beyond the order of restitution.

Accordingly, we VACATE the order of restitution and REMAND for proceedings consistent with the Supreme Court's opinion in *Paroline.*

RESTITUTION ORDER VACATED; REMANDED.

**UNITED STATES of America, Plaintiff–Appellee**

v.

**Eduardo RAMIREZ, also known as Pollo, Defendant–Appellant.**

No. 13–40708.

United States Court of Appeals, Fifth Circuit.

July 30, 2014.

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Renata Ann Gowie, Assistant U.S. Attorney, U.S. Attorney's Office, Houston, TX, for Plaintiff–Appellee.

John Riley Friesell, Houston, TX, for Defendant–Appellant.

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

PER CURIAM: *

After a jury trial, Defendant–Appellant Eduardo Ramirez ("Ramirez") was convicted of conspiring to possess with intent to distribute over 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846, and possessing with intent to distribute over 1,000 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). Ramirez was sentenced to 235 months imprisonment. He now appeals the district court's jury instruction and his sentence. Finding no error, we affirm.

In August 2011, Ramirez contacted Gilbert Gomez, a drug trafficker turned government informant, about transporting marijuana from the Rio Grande Valley to Houston, Texas. Ramirez stated that he would obtain a tractor-trailer truck to transport the drugs and split the proceeds of the crime equally with Gomez and several other co-conspirators. Ramirez gave Gomez the title to a tractor-trailer so that Gomez could obtain necessary paperwork, including insurance, license plates, and a company name for the truck. He also provided the money necessary for Gomez to perform these tasks, and Gomez com-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

plied. Eventually, Ramirez arranged to bring a load of charcoal across the border to mask the marijuana, which he and his co-conspirators had obtained from a source in Mexico. The marijuana was hidden in a specially constructed compartment in the tractor-trailer. After the drugs were delivered, the police stopped and seized the van into which the drugs had been transferred. After the drugs were seized, Ramirez met with Gomez in a convenience store. He gave Gomez a box containing $30,000 that was intended to pay the driver of the tractor-trailer, whose services Gomez had procured, and argued with him about how to proceed in light of the bust.

A federal grand jury indicted Ramirez and he was tried before a jury. The government presented evidence primarily through testimony from Gomez and law enforcement officers. The government also introduced three recordings made by Gomez that capture conversations with Ramirez in Spanish, along with transcripts of the conversations translated into English. Ramirez was convicted and sentenced to the low end of the guideline range.

In this appeal, Ramirez raises three issues: (1) whether the district court erred in its jury instruction on English-language transcripts of recorded conversations in Spanish; (2) whether the district court erred in finding Ramirez an organizer or leader under U.S.S.G. § 3B1.1.; and (3) whether the district court erred in applying a two-level obstruction of justice enhancement under U.S.S.G. § 3C1.1 for Ramirez's false testimony.

## 1. Jury Instructions.

The government introduced into evidence three recordings of conversations in Spanish and three transcripts that translated the recordings into English. Gomez made the recordings wearing a wire. Witnesses testified that the transcripts accurately reflected the contents of the recordings, and Ramirez did not object to the accuracy of the transcripts.

Ramirez requested that the district court instruct the jury in accordance with Fifth Circuit Pattern Jury Instruction (Criminal) 1.42, which provides a cautionary instruction when transcripts of recorded conversations in English are used at trial, reminding jurors that the recording is primary evidence. Ramirez further proposed that the court instruct the jury that it was the jury's responsibility to determine "whether the transcript correctly or incorrectly reflects the content of the conversation or the identity of the speakers"; that the recording itself was "the primary evidence of its own contents"; and that should the jurors "determine that the transcript is in any respect incorrect or unreliable, [they] should disregard it to that extent."

The district court denied Ramirez's request. The court determined that Pattern Instruction § 1.42 applies when the recording and the transcript are both in English, but when the recording is in a foreign language, a different instruction is appropriate. In those circumstances, the court explained, the recording must be translated into English, because court proceedings must be in English. Moreover, the English translation in the transcript is the official record that the jury should rely on for the contents of the recorded conversation. The court acknowledged, however, that the recording may be considered by the jury for reasons other than assessing the contents of the conversation; for example, as an aid to determine that a particular person is speaking.

When a defendant has properly preserved his objection, this Court reviews a district court's jury instruction for an abuse of discretion. *United States v. Aldawsari*, 740 F.3d 1015, 1019 (5th Cir.

2014). The Court considers "whether the instruction, taken as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *Id.* (citations and internal quotation marks omitted).

■ There is some debate about whether Ramirez's objection was properly preserved, but under any standard, the district court's instruction was proper. A district court may allow a jury to use a transcript for assistance as it listens to a tape recording. *United States v. Onori,* 535 F.2d 938, 947 (5th Cir.1976). Typically, the recording is the primary evidence, but when that recording captures a foreign language conversation the transcript controls. *See United States v. Valencia,* 957 F.2d 1189, 1195 (5th Cir.1992). The district court properly instructed the jury to consider the English language transcript as the primary evidence.

## 2. Role Enhancement.

Section 3B1.1(a) of the Sentencing Guidelines calls for a four-level increase to a defendant's offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). The PSR concluded that Ramirez qualified for a four-level enhancement as an organizer or leader. The district court accepted the recommendation of the PSR and applied the enhancement. Ramirez objects, claiming that Gomez had primary responsibility for transporting the marijuana to Houston.

A district court's determination that a defendant qualifies as a leader or organizer for purposes of U.S.S.G. § 3B1.1(a) is a factual finding this court reviews for clear error. *United States v. Gonzales,* 436 F.3d 560, 584 (5th Cir.2006). A factual finding "is not clearly erroneous 'as long as it is plausible in light of the record as a

whole.'" *Id.* (quoting *United States v. Holmes,* 406 F.3d 337, 363 (5th Cir.2005)).

■ The conclusion that Ramirez was a leader or organizer was not clearly erroneous. The PSR, adopted by the district court, found that Ramirez was responsible for "making sure that the paperwork of the tractor/trailer was in order" and "securing a driver." The PSR also noted that Ramirez helped recruit "his son Eduardo Ramirez Jr. and Gilberto Gomez who acquired the driver," "coordinated the transportation arrangements," "negotiated the amount he was going to pay the driver," and "paid $30,000 for the driver after the load was taken to Houston, Texas." Ramirez also "spoke directly with the purchaser(s) of the marijuana in Houston, Texas." At trial Gomez testified that Ramirez was "the boss" and "in charge." Trial evidence also suggested that it was Ramirez's idea to use a load of charcoal to smuggle the marijuana and that Ramirez had direct contact with the source of the drugs, as he served as the intermediary between the source and Gomez by passing along the $30,000 payment. There is ample evidence to support the application of the role enhancement; the district court did not err.

## 3. Obstruction of Justice Enhancement.

■ Section 3C1.1 of the Sentencing Guidelines provides for an increase of two offense levels "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the . . . prosecution . . . of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. Perjury will trigger the two-level obstruction of justice enhancement. *See* U.S.S.G. § 3C1.1 cmt. n. 4(B). But "the fact of a

conviction does not imply that a testifying defendant committed perjury." *United States v. Perez–Solis,* 709 F.3d 453, 469 (5th Cir.2013). Rather, a defendant commits perjury for purposes of U.S.S.G. § 3C1.1 if he or she testifies under oath and affirmation and "gives [1] false testimony concerning [2] a material matter with [3] the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.*

The PSR concluded that Ramirez qualified for a two-level obstruction enhancement because he provided materially false statements about his conduct when he testified at trial. At the sentencing hearing, Ramirez objected, maintaining his testimony was not false, but merely mistaken. The district court overruled the objection and found the enhancement warranted. After the sentence was pronounced, Ramirez was offered the opportunity to raise objections to the sentence, and he did not renew his objection to the enhancement. On appeal, Ramirez contends that the district court did not make an independent finding of perjury, but rather based the enhancement on the jury's verdict.

We review a district court's factual findings supporting an obstruction of justice enhancement for clear error. *See United States v. Miller,* 607 F.3d 144, 148 (5th Cir.2010).[1]

The district court clearly found that Ramirez's testimony was material, false, and not the product of misunderstanding, confusion, or faulty memory. The PSR compares Ramirez's testimony that he did not pay the $30,000 with other evidence presented at trial, including agents who witnessed Ramirez handing Gomez the box

containing the $30,000. The district court stated that it took the information contained in the PSR into account when making its findings, and we have previously held that the reasoning in the PSR can form the basis for the district court's findings. *See United States v. Cabral–Castillo,* 35 F.3d 182, 187 & n. 4 (5th Cir.1994) (citing *United States v. Laury,* 985 F.2d 1293 (5th Cir.1993)). The district court did not err when it applied the U.S.S.G. § 3C1.1 enhancement.

Accordingly, the conviction and sentence are **AFFIRMED.**

---

1. The government contends that Ramirez did not properly preserve his objection because he did not renew his objection after the sentence was pronounced. Therefore, the government argues, this objection should be reviewed under a plain error standard. Because we find that the sentence survives the more stringent clear error standard, we need not resolve this dispute.